IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN HOUSE, | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:14-CV-02133 |
| | : | |
| vs. | : | |
| | : | |
| JOHN FISHER, et al., | : | (Judge Rambo) |
| | : | |
| Defendants | : | |

**MEMORANDUM**

## Background

On November 6, 2014, Juan House, an inmate
confined at the State Correctional Institution at
Smithfield, Huntingdon, Pennsylvania ("SCI-Smithfield"),
filed a pro se civil rights complaint pursuant to 42
U.S.C. § 1983 against eight named individuals and an
unspecified number of "John Does" employed by or under
contract with the Pennsylvania Department of
Corrections. Doc. 1, Complaint.  Along with the
complaint House filed a motion for leave to proceed in
forma pauperis. Doc. 2.  On November 12, 2014, the court
construed House's motion to proceed in forma pauperis as
a motion to proceed without full prepayment of fees and
costs, and granted that motion. Doc. 6.  Also, on

November 12, 2014, the court directed the United States Marshal to serve the complaint on the defendants named therein and the Clerk of Court sent House an Administrative Order directing him to pay the filing fee or file an authorization form within thirty (30) days. Docs. 7. House filed an authorization form on November 17, 2014, and the court issued an order directing the Warden of SCI-Smithfield to commence deducting the filing fee from House's prison account. Docs. 9 and 10.

On November 21, 2014, House filed a motion to file an amended complaint. Doc. 12.  On November 25, 2014, the court granted that motion and, after being granted several extensions of time, House on April 27, 2015, filed an amended complaint. Doc. 28.

The  amended complaint was filed pursuant to 42 U.S.C. § 1983 against Dorina Varner, the Chief Grievance Coordinator at the Central Office of the Department of Corrections and the following eight individuals employed by or under contract with the Pennsylvania Department of Corrections at SCI-Smithfield: Superintendent John Fisher; Grievance Coordinator Lisa Hollibaugh; Captain

T. Sunderland;[1]  Lieutenant Abrashoff; Corrections Officers J.M. Householder, Kenawell[2] and Forston; and Psychiatrist, Dr. Dolphin.[3] Doc. 28. House also names as defendants an unspecified number of "John Does."[4] Id. The court will divide the defendants into a group, referred to as the "Corrections Defendants" consisting of Superintendent John Fisher; Grievance Coordinator

---

[1]. Captain Sunderland is not named as a defendant in the "Defendants" section of the complaint.

[2]. Corrections Officer Kenawell is not named as a defendant in the "Defendants" section of the complaint.

[3]. Dr. Dolphin is represented by separate counsel because he is not an employee of the Department of Corrections but apparently under contract with the Department to provide psychiatric services.

[4]. The "John Does" have not been identified or served by House. It is well-settled that the use of John/Jane Doe defendants absent compelling reasons will not suffice and the district court may dismiss such defendants if plaintiff, after being granted a reasonable period of discovery, fails to identify the defendants. Sheetz v. Morning Call, 130 F.R.D. 34 (E.D. Pa. 1990). Based on this court's review of the record, although his action was filed approximately 15 months ago, House has not yet provided this court with the identities of the John Doe defendants. Thus, this court will grant House ninety days from the date of this memorandum and order in which to properly identify the John Doe defendants. If House fails to timely identify those defendants, they shall be dismissed from this action under the authority of Sheetz.

Lisa Hollibaugh; Captain T. Sunderland;  Lieutenant
Abrashoff; and Corrections Officers J.M. Householder,
Kenawell and Forston; and the claims against Dr. Dolphin
will be considered separately.

House alleges that Defendants violated his
rights under the First and Eighth Amendments to the
United States Constitutions as a result of incidents
which occurred on May 8, 2014, when House allegedly
attempted to commit suicide and his treatment by the
defendants for several days after that attempt. Id. at
3-7.  House contends that the conduct of some of the
defendants towards him was in retaliation for his prior
exercise of his First Amendment right to report
misconduct of corrections officers. Id. He further
contends that the conditions to which he was subjected
and the medical treatment he received violated his
rights under the Eighth Amendment. Id.   As relief,
House requests (1) the issuance of a declaratory
judgment indicating that his rights were violated, (2)
injunctive relief against Defendants Forston, Kenawell,
Householder and Abrashoff directing them "to cease their

cruel and unusual punishment and arbitrary acts of retaliation," and (3) compensatory and punitive damages. Id. at 10-11.

On June 29, 2015, the Corrections Defendants filed a motion to dismiss House's amended complaint. Doc. 42  On July 13, 2015, the Corrections Defendants filed a brief in support of the motion to dismiss. Doc. 46.  On July 13, 2015, defendant Dolphin filed a motion to dismiss the amended complaint. Doc. 47.  On July 27, 2015, defendant Dolphin filed a brief in support of that motion.  On September 2, 2015, House filed a brief in opposition to both motions to dismiss. Doc. 61.  The motions to dismiss became ripe for disposition on September 21, 2015, when the Corrections Defendants and Defendant Dolphin elected not to file a reply briefs. For the reason set forth below, the court will grant in part and deny in part the Corrections Defendants' motion to dismiss and grant Dr. Dolphin's motion to dismiss.

**Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must

"accept all factual allegations as true, construe the
complaint in the light most favorable to the plaintiff,
and determine whether, under any reasonable reading of
the complaint, the plaintiff may be entitled to relief."
Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d
Cir.2009) (quoting Phillips v. County of Allegheny, 515
F.3d 224, 231 (3d Cir.2008)).  While a complaint need
only contain "a short and plain statement of the claim,"
Fed.R.Civ.P. 8(a)(2), and detailed factual allegations
are not required, Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929
(2007), a complaint must plead "enough facts to state a
claim to relief that is plausible on its face." Id. at
570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d
929.  "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a
sheer possibility that a defendant has acted
unlawfully." Ashcroft v. Iqbal,___U.S.___, 129 S.Ct.
1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550
U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and
conclusions" are not enough, Twombly, 550 U.S. at 555,
127 S.Ct. at 1964-65, and a court "'is not bound to

accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

In addition, because House complains about "prison conditions," the screening provisions,  28 U.S.C. § 1915(e), of the PLRA apply,[5] given that House was granted in forma pauperis status to pursue this

---

5.  Section 1915(e)(2), which was created by § 804(a)(5) of the PLRA, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at anytime if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

suit.  The court's obligation to dismiss a complaint
under the PLRA screening provisions for complaints that
fail to state a claim is not excused even after
defendants have filed a motion to dismiss. See, e.g.,
Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir.
2000). Hence, if there is a ground for dismissal which
was not relied upon by a defendant in a motion to
dismiss, the court may nonetheless *sua sponte* rest its
dismissal upon such ground pursuant to the screening
provisions of the PLRA. See Lopez; Dare v. U.S., Civil
No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21,
2007), aff'd, 264 Fed. Appx. 183 (3d Cir.2008).

**Allegations of the Amended Complaint**

The court has thoroughly reviewed the amended
complaint including the documents House attached as
exhibits thereto and will at this point set forth the
factual averments made by House. Doc. 28.

House initially alleges that on January 25,
2014, he reported an assault incident and that since
reporting that incident he has been subjected to
retaliation including conduct by corrections officers on
May 8, 2014. Id. at 3, ¶ 14.  The amended complaint

8

reveals that House, as a result of refusing to return his breakfast tray, received the sanction of being placed on "food loaf," a behavior modified meal. Id., ¶ 15.  House contends that at lunch time (about 10:45 a.m.) on May 8, 2014, corrections officers failed to serve him his "food loaf" although "[e]veryone else was fed their meal[.]" Id.  House claims this refusal by the corrections officers was in retaliation for his failure to "giv[e] up his tray in the morning[.]" Id.  House alleges that he asked defendant Abrashoff about his food loaf and the Abrashoff responded by stating "Next time you'll think twice about holding your tray." Id.  House claims this was unlawful retaliation.[6] Id.

At about 11:15 a.m. House claims that as a result of the retaliation he pressed the emergency call button in order to "get his meal, but the correctional officers that answered . . . kept putting him off[.]"

_____

6. As will be explained infra there are several elements to retaliation claim, including that the plaintiff must prove allege and prove that he was engaged in a constitutionally protected activity. Clearly holding onto a food tray is not a protected constitutional right.  The court will summarily dismiss this aspect of House's retaliation claim.

Id. at 3-4, ¶ 16.  House then claim that this "retaliation" by the corrections officers "trigger[ed] . . . his severe mental illness, which he is diagnosed for depression, which he takes medication for." Id.  House claims that at about 11:30 he explained to defendant Abrashoff that he was suicidal but was ignored and that over the next several hours repeatedly press his emergency call button and told correctional officers that he was suicidal. Id. at 4, ¶¶ 17-18. House alleges that when he informed corrections officers that he was suicidal they laughed and "kept telling [him] 'to get it over with and hang it up.'" Id., ¶ 17.

House also alleges that other inmates pressed their emergency buttons to let corrections officers know that he was suicidal but those inmates were ignored. Id., ¶ 19. At some point, after repeatedly pressing his emergency button, House claims he placed toilet paper over the window of his cell door in an attempt to get immediate attention from the corrections officers. Id., ¶ 20. House alleges that this attempt was also ignored because he could hear corrections officers walking by his door when it was covered. Id. House further alleges

that prior to covering the window, he informed defendants Forston and Kenawell that he was suicidal and that they responded by saying that "he writes to many grievances on staff" and that "Lt. Abrashoff told [them] that [House] reported an assault incident on their coworkers and Abrashoff did not like that, so that's why they ignored House." Id. at 4-5, ¶ 20.  House further avers that at one point he uncovered the window of his "cell window door to try to talk face to face with the defendants one last time" but was ignored by defendants Abrashoff, Kenawell, Forston, J.M. Householder, and a "John Doe" correctional officer. Id. at 5, ¶ 24. After that encounter, House alleges that he tied a sheet around his neck and hanged himself in his cell. Id. House claims that just before he lost consciousness he remembers seeing Defendant Kenawell looking at him and then walking away. Id. at 6, ¶ 25.

The next allegation by House appears to be based on what another inmate told House because it is phrased as follows; "Plaintiff Juan looses (sic) consciousness

11

and some moments later, Defendant J. M. Householder rushes in the cell and brings Juan down from the hanging." Id.   It is then alleged that medical staff were called, House could not move his body or neck, he was placed in a neck brace and then on a stretcher and he was then taken to the medical department. Id., ¶ 26. After receiving a medical evaluation, he was then placed in a psychiatric observation cell and "put on suicide watch." Id.

House claims that after this incident he was "put on the Mental Health Roster" which is for those inmates "that are suppose to be monitored more carefully."  Id., ¶ 27.  He also claims that his suicide attempt was documented in his medical and mental health files; and prior to the suicide attempt he was taking psychotropic medications for his depression. Id. House claims that while in the psychiatric observation cell his rights were violated when Dr. Dolphin failed to provide him with hygienic materials and showers. Id., ¶ 28.  House claims that Dr. Dolphin does not allow

inmates in the psychiatric observation cell to have
access to hygiene materials so that inmates are as
"uncomfortable as possible so they're reluctant to stay
in the [psychiatric observation cell]." <u>Id.</u>  House also
contends that Dr. Dolphin failed to involuntarily commit
him to a licensed inpatient facility or mental health
facility and "overlooked" House's placement on the
mental health roster. <u>Id.</u>, ¶¶ 29 and 30. House contends
that Dr. Dolphin violated his rights under the First,
Eighth and Fourteenth Amendments. <u>Id.</u> at 10, ¶¶ 42-44.

The only allegations against Defendant Varner
relate to her involvement in reviewing and responding
to appeals filed by House relating to grievances he
filed at SCI-Smithfield.  Furthermore, there are no
allegations against defendants Fisher, Sunderland and
Hollibaugh other than with respect to their actions in
reviewing grievances.

**<u>Discussion</u>**

The Corrections Defendants raise several arguments in support of their motion to dismiss the amended complaint.

First, the Corrections Defendants argue that House's failure to protect claims against the Defendants Kenawell, Forston, Abrashoff and Householder are not viable because (1) they did not disregard a known excessive risk to House's Health or safety, (2) they did not infer that a substantial risk of serious harm existed to House, and (3) House did not plead any of the Defendants knew that he faced an excessive risk of harm. The second argument in a related vein is that House's claim that they were deliberately indifferent to his need for medical/mental health treatment should be dismissed.

The court does not find any merit in these arguments.  Initially it should be again mentioned that the present motion is one to dismiss the amended complaint for failure to state a claim upon which relief can be granted.  The court in reviewing such a motion is

14

to accept all well-pleaded facts as true and to construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.

House's failure to protect claim is based on the Cruel and Unusual Punishments Clause of the Eighth Amendment. Claims based upon the Cruel and Unusual Punishments Clause have both objective and subjective components. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991) Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. <u>Id.</u>  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind".  <u>Id.</u>

With regard to the subjective component, to establish an Eighth Amendment claim, House must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 827 (1994) (citing

15

Helling v. McKinney, 509 U.S. 25 (1993); Wilson v.
Seiter, *supra*; Estelle v. Gamble, 429 U.S. 97 (1976)).
In other words, the official must know of and disregard
an excessive risk to inmate health or safety.  Natale v.
Camden County Corr. Facility, 318 F.3d at 582; Farmer,
511 U.S. at 837.

    With respect to the failure to protect claim,
the law relating to a corrections officer failing to
prevent assaults by other inmates is relevant.  In that
context a plaintiff must prove more than that he had a
fight with another inmate, see Beard v. Lockhart, 716
F.2d 544, 545 (8th Cir. 1983), and mere negligent
conduct that leads to serious injury of a prisoner by a
prisoner does not expose a prison official to liability.
Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). To
succeed, a prisoner must show that: (1) he was
incarcerated under conditions posing a substantial risk
of serious harm; (2) the defendant was "aware of facts
from which the inference could be drawn that a
substantial risk of serious harm exists"; (3) the

defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. <u>Farmer</u>, 511 U.S. at 834-37.

As for the medical/mental health care aspect of House's claim, the objective component of an Eighth Amendment medical care claim, <u>i.e.</u>, whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992). A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. <u>Johnson v. Busby</u>, 953 F.2d 349, 351 (8th Cir. 1991); <u>Monmouth County Correctional Institution Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987); <u>Ramos v. Lamm</u>, 639 F.2d 559, 575 (10th Cir. 1980), <u>cert. denied</u>, 450 U.S. 1041 (1981); <u>West v. Keve</u>, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978). The serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or

extreme pain.  See Monmouth County Correctional
Institution Inmates v. Lanzaro, 834 F.2d at 347; Archer
v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); Todaro v.
Ward, 565 F.2d 48, 52 (2d Cir. 1977).

The facts alleged in the amended complaint
against Abrashoff, Kenawell, Forston, and Householder
are sufficient to make out a failure to protect claim
and a claim that they failed to take steps to see that
he was provided with mental health care. House alleges
that he repeatedly informed those defendants that he was
suicidal. It further appears that they were aware that
he was under psychiatric care by Dr. Dolphin.  He
further alleges they taunted him to commit suicide,
i.e., "go ahead and hang it up."  These allegations
suggest that defendants had the requisite culpable state
of mind and that they were aware of a substantial risk
of harm to House and they ignored that risk.  The
defendants culpable state of mind is also supported by
the alleged statements of Kenawell and Forston
indicating that House's pleas were ignored because of

his previous complaints against their coworkers.  Under the circumstances House has sufficiently pleaded a failure to protect claim and a claim that they were deliberately indifferent to his mental health needs.

The third argument is that House has failed to sufficiently plead the personal involvement of defendants Sunderland, Fisher, Varner and Hollibaugh in the alleged wrongful conduct of May 8, 2014.  The court find substantial merit in this argument.

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements:  1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Moreover, in addressing whether a viable claim has been stated against a defendant the court must

assess whether House has sufficiently alleged personal
involvement of the defendant in the acts which he claims
violated his rights.  Liability may not be imposed under
§ 1983 on the traditional standards of <u>respondeat
superior</u>. <u>Capone v. Marinelli</u>, 868 F.2d 102, 106 (3d
Cir. 1989)(citing <u>Hampton v. Holmesburg Prison
Officials</u>, 546 F.2d 1017, 1082 (3d Cir. 1976)).  In
<u>Capone</u>, the court noted "that supervisory personnel are
only liable for the § 1983 violations of their
subordinates if they knew of, participated in or
acquiesced in such conduct." 868 F.2d at 106 n.7.

     With respect to defendants Sunderland, Fisher,
Varner and Hollibaugh, the court discerns no allegations
in the amended complaint that they were involved in any
conduct which violated House's constitutional rights.
There only involvement, if any, was with respect to the
handling of House's grievances and appeals relating
thereto.  Such involvement is insufficient as a matter
of law to render those defendants liable.  "[T]he
failure of a prison official to act favorably on an

20

inmate's grievance is not itself a constitutional violation." <u>Rauso v. Vaughn</u>, Civil No. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). <u>See also</u> <u>Overholt v. Unibase Data Entry, Inc.</u>, 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir.2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); <u>Mitchell v. Keane</u>, 974 F.Supp. 332, 343 (S.D.N.Y.1997) ("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); <u>Caldwell v. Beard</u>, Civil No. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a

premise for liability [i.e., for performing a role in
the grievance process] fails as a matter of law."),
aff'd,--- Fed.Appx. ----, 2009 WL 1111545 (3d Cir. April
27, 2009); Caldwell v. Hall, Civil No. 97-8069, 2000 WL
343229, at *2 (E.D.Pa. March 31, 2000) ("The failure of
a prison official to act favorably on an inmate's
grievance is not itself a constitutional violation.");
Orrs v. Comings, Civil No. 92-6442, 1993 WL 418361, at
*2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a
defendant failed to act on a grievance or complaint does
not state a Section 1983 claim."); Jefferson v. Wolfe,
Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July
11, 2006) ("These allegations [of denying grievances or
grievance appeals] are insufficient to establish such
Defendants' personal involvement in the challenged
conduct under Section 1983. See Watkins v. Horn, 1997 WL
566080 at * 4 (E.D.Pa..[sic] 1997) (concurrence in an
administrative appeal process is not sufficient to
establish personal involvement)"). Consequently, House
claims against Sunderland, Fisher, Varner and Hollibaugh

are not viable and the amended complaint as it relates
to them will be dismissed.

The Corrections Defendants next argument is that
House has failed to state a claim of retaliation. To
establish a Section 1983 retaliation claim, a plaintiff
bears the burden of satisfying three elements.  First, a
plaintiff must prove that he was engaged in a
constitutionally protected activity.  <u>Rauser v. Horn</u>,
241 F.3d 330, 333 (2001). Second, a prisoner must
demonstrate that he "suffered some 'adverse action' at
the hands of prison officials." <u>Id</u>. (quoting  <u>Allah v.
Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).  This
requirement is satisfied upon showing that "the action
'was sufficient to deter a person of ordinary firmness
from exercising his First Amendment rights.'" <u>Id</u>.
(quoting <u>Allah</u>, 229 F.3d at 225). Third, a prisoner must
prove that "his constitutionally protected conduct was
'a substantial or motivating factor' in the decision to
discipline him" or take the adverse action. <u>Id</u>.

(quoting <u>Mount Healthy Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977).

As for Sunderland, Fisher, Varner and Hollibaugh it is clear that House has failed to state a retaliation claim. However, the alleged facts previously mentioned with respect to the failure to protect claim sufficiently set fort a claim of retaliation by defendants Abrashoff, Kenawell, Forston, and Householder. Consequently, the motion to dismiss the retaliation claim as it relates to those defendants will be denied.

The Corrections Defendants final argument is that the claims against them for damages in their official capacities are barred by the Eleventh Amendment. The court agrees with that argument. A state official sued in his or her official capacity is not a "person" for purposes of § 1983 where the relief sought is monetary damages because the Supreme Court has not construed § 1983 as an abrogation of the states'

24

Eleventh Amendment immunity.  <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 63-71 (1989). <u>Will</u> clearly precludes actions for damages against state officials acting in their official capacities. Consequently, to the extent House seeks damages against the Defendants in their official capacities, those claims will be dismissed.

The court will next address Dr. Dolphin's motion to dismiss. House's claims against Dr. Dolphin are primarily premised on the Eighth Amendment.  However, he also appears to be attempting to assert a First Amendment retaliation claim against Dr. Dolphin. A review of the amended complaint clearly reveals that he has failed to state facts giving rise to such a claim. There are no facts alleged from which it could be concluded that Dr. Dolphin retaliated against House because House engaged in First Amendment protected activity.

As state above claims based upon the Cruel and Unusual Punishments Clause have both objective and

25

subjective components.  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component and the subjective component is met if the person or persons causing the deprivation acted with the requisite culpable state of mind.

House contends that when he was confined in the psychiatric observation cell for an unspecified number of days he was denied hygienic materials and showers. House in the amended complaint admits that inmates who are placed in the psychiatric observation cell are not always permitted to use certain items for hygienic upkeep, depending on the inmate's mental condition.  It is clear that House has sufficiently pleaded a serious medical/mental health need.  However, he was treated for that condition by Dr. Dolphin.  At best, House's amended complaint demonstrates his disagreement with the scope and extent of treatment by Dr. Dolphin, the attending medical professional.  House's disagreement with the course of treatment, however, does not serve as a predicate to liability.  When an inmate is provided

with medical care and the dispute is over the adequacy of that care, no Eighth Amendment claim exists.  White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990).  "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice[.]" Estelle, 429 U.S. at 107.  A mere difference of opinion between the inmate and the prison's medical staff regarding the diagnosis or treatment that the inmate receives does not support a claim of cruel and unusual punishment.  See McFadden v. Lehman, 968 F. Supp. 1001 (M.D. Pa. 1997); Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992).  The key question is whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what the plaintiff wants. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

    The facts alleged establish efforts by Dr. Dolphin to provide House with necessary mental health care, and an attendant mental state that falls short of

deliberate indifference. Furthermore, with regard to the lack of hygienic materials and showers, House was placed in the psychiatric observation cell for a relatively brief period and there are no facts alleged that House suffered the requisite severe hardship as a result of that alleged deprivation.[7] In fact House alleges that after the May 8, 2014, incident and his release from the psychiatric observation cell, he requested several times

_____

7.  In the context of the prison environment, "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Part of the penalty facing those who violate the norms of society is routine discomfort.  Id.; Rhodes v. Chapman, 452 U.S. 337, 346 (1981).  The Eighth Amendment does not require that inmates be provided with comfortable prisons.  Rhodes, 452 U.S. at 349; Loe v. Wilkinson, 604 F. Supp. 130, 133-34 (M.D. Pa. 1984); see also Harris v. Fleming, 839 F.2d 1232, 1234 (7th Cir. 1988)(state inmate deprived of soap, toothpaste and toothbrush for twenty-eight days suffered no violation of constitutional rights because he experienced no physical harm and conditions were temporary); Veteto v. Miller, 829 F.Supp. 1486, 1495 (M.D.Pa. 1992)("Veteto's claims regarding the denial of meals, clean clothes, showers and recreation periods must be dismissed.  These conditions . . . cannot be said to have constituted cruel and usual punishment, either alone or in the aggregate especially when one considers the relatively brief duration of his assignment to the administrative detention unit.").

to be placed in the psychiatric observation cell. Doc. 28, Amended Complaint, at 7, ¶ 31.

There are no facts alleged in the amended complaint from which it could be concluded that Dr. Dolphin acted with deliberate indifference to House's mental health needs. Therefore, because the allegations against Dr. Dolphin are too conclusory the Court will grant Dr. Dolphin's motion to dismiss.

An appropriate order will be entered.

 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: February 11, 2016